# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-74V
UNPUBLISHED

| | |
|---|---|
| CHERYL WELCH,<br><br>              Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>              Respondent. | Chief Special Master Corcoran<br><br>Filed: April 5, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Injury (SIRVA) |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*Mollie Danielle Gorney*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION AWARDING DAMAGES**[1]

On January 16, 2018, Cheryl Welch filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that as a result of receiving an influenza ("flu") vaccine on September 29, 2016, she suffered from a shoulder injury related to vaccine administration ("SIRVA"). Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"), and Petitioner was determined to be entitled to damages – but the parties could not agree on the amount to be awarded.

For the reasons discussed below, and after hearing argument from the parties, I find that Petitioner is entitled to $210,000.00 for actual/past pain and suffering, plus

---

[1] Although this Decision has been deemed unpublished, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet**. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

$11,234.94 for past unreimbursed expenses, and $1,609.13 in past lost wages, for a total award of $222,844.07.

## I.      Relevant Procedural History

A little more than a year after the case's initiation, on March 8, 2019, Respondent filed a Rule 4(c) Report conceding that Petitioner was entitled to compensation. ECF No. 32. A ruling on entitlement issued on March 8, 2019. ECF No. 35. The parties thereafter attempted to informally resolve damages but were unsuccessful.

On November 13, 2020, I issued a scheduling order regarding the briefing of disputed damages issues. ECF No. 80. The parties filed their respective briefs and replies on November 30, 2020 (ECF No. 85, Petitioner's Memorandum in Support of Damages ("Br.")), December 30, 2020 (ECF No. 86, Respondent's Brief on Damages ("Resp.")), and January 13, 2021 (ECF No. 88, Petitioner's Reply to Respondent's December 30, 2020 Memorandum in Support of Damages). The parties stated on January 29, 2021, that they would be amenable to an expedited hearing and ruling at an SPU Motions Day. ECF No. 90. At that time, the only disputed damages to be resolved would involve pain and suffering. *Id.* The hearing was held on March 26, 2021, and this decision memorializes my oral ruling provided on that date.[3]

## II.     Relevant Medical History

A complete recitation of the facts can be found in the Petition, the parties' respective pre-hearing briefs, and in Respondent's Rule 4(c) Report. At the time of vaccination, Ms. Welch was a 60-year old woman who received a flu vaccine on September 29, 2016 prior to knee replacement surgery. Ex. 1 at 1; Ex. 3 at 12; Ex. 4 at 338.

Petitioner first complained of shoulder pain on October 6, 2016, stating that it began after a September 29, 2016 vaccination. Ex. 10 at 4. Her course of treatment was not significant at this time, consisting of an MRI on November 18, 2016 (Ex. 3 at 37-38) and a cortisone injection on December 1, 2016. *Id.* at 6-7. On February 3, 2017, Petitioner reported that her pain returned, and she exhibited a reduced range of motion upon examination. *Id.* at 4-5. Petitioner underwent left shoulder arthroscopic acromioplasty and rotator cuff repair on February 8, 2017. *Id.* at 28-29.

---

[3] At the end of the hearing held on March 26, 2021, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

Between February 8 and May 30, 2017, Petitioner attended thirteen physical therapy sessions and showed some improvement. At the time of her discharge, Ms. Welch had returned to her prior levels of functions but had some limited range of motion. Ex. 8 at 15. She reported continued pain and reduced range of motion in July 2017 and had a second cortisone injection. Ex. 11 at 1-2. Petitioner did not seek additional care for eleven months. However, she submitted an affidavit indicating that she continued to experience pain, described as a constant ache, at that time. Ex. 12 at 5-6.[4] In August 2018 Petitioner returned to her orthopedist reporting continued pain and reduced range of motion. Ex. 14 at 3-4. She underwent a second shoulder surgery on September 4, 2018. *Id.* at 5.

Petitioner attended six physical therapy sessions between November 14, 2018 and January 16, 2019. At the initial evaluation she reported "consistently had a 3/10 achy pain, but pain can increase to 7/10 with reaching or quick movements." Ex. 17 at 3, 5; Ex. 31 at 5-6. Petitioner continued to complain of pain and weakness, and had a third steroid injection on January 21, 2019. Ex. 18 at 1-2. An MRI on March 1, 2018 showed a re-tear of the supraspinatus and infraspinatus tendons, mild tendinosis, and some signs of bursitis. Ex. 19 at 6-7. Due to "lifestyle-limiting left shoulder pain" petitioner underwent a reverse total shoulder replacement on April 30, 2019. Ex. 20 at 9-12. She attended sixteen occupational therapy sessions between May 16, 2019 and July 24, 2019.

In March of 2020, Petitioner continued to complain of left shoulder pain, which may have been exacerbated by degenerative disc disease. Ex. 29 at 32-35. She attended five additional physical therapy sessions in April 2020 with minimal results and was discharged on May 4, 2020 due to lack of improvement and cervical pain. Ex. 28 at 126. An MRI on June 17, 2020 showed moderate to severe stenosis, which may have contributed to her shoulder pain. Ex. 29 at 39-40. Petitioner than had a neurosurgical consultation on July 24, 2020 for left shoulder pain, reduced range of motion, and chronic lower back pain.

Petitioner attended eight additional physical therapy sessions for her shoulder in August-September 2020, with some improvement. Ex. 32 at 38-39, 51-63. On September 9, 2020, Petitioner reported her pain levels was 4/10 and she had made a 50 percent improvement since the initial evaluation. At that time, she also began treating her lower back pain. *Id.* at 12-35. While she had some improvement, Petitioner ultimately consulted with a pain management doctor on September 29, 2020, reporting an average pain of 6/10 and 8/10 at worse. *Id.* at 20-23.

---

[4] Petitioner's second affidavit dated October 9, 2019 provides additional details about why she was not treating during this time, explaining that she was caring for her terminally ill husband until November 2017 when he passed away. Ex. 26 at 4.

3

At the time of the hearing, Ms. Welch reported she continues to have chronic pain, plus weakness in her left shoulder. Ex. 33 at 2-3.

### III. Legal Standard

Compensation awarded pursuant to the Vaccine Act may include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, . . . not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

In *Graves*, Judge Merrow rejected the special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap, criticizing this as constituting "the forcing of all suffering awards into a global comparative scale in which the individual Petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590. Instead, he found that pain and suffering should be assessed by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program, applying the statutory cap only thereafter. *Id*. at 595.

### IV.     Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Petitioner's awareness of her injury is not disputed, leaving only its severity and duration to be considered. In determining appropriate compensation for Petitioner's pain and suffering, I have carefully reviewed and considered the complete record in this case. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating such cases. However, my determination is ultimately based upon the specific circumstances of this case.

Petitioner requests an award of $230,000.00 in pain, suffering, and emotional distress, plus $1,000.00 per year for future pain and suffering. Petitioner argues that her extensive course of treatment, taking place over more than four years, justifies this award. Her treatment included three surgeries, three cortisone injections, multiple MRIs, over four dozen physical therapy sessions, continued home exercises, and prescription medications. Br. at 44. Further, during the first temporal stage of her injury Petitioner was caring for her terminally ill husband and retired early from her job as an addiction counselor in part due to the pain and emotional distress from the SIRVA. *Id.* at 45. Petitioner cites to two SPU cases as analogous to hers: *Schoonover v. Sec'y of HHS*, No. 16-1324V, 2020 WL 5351341 (Fed. Cl. Aug. 5, 2020) (awarding $200,000 for past pain and suffering, and $1,200 per year for future pain and suffering) and *Hooper v. Sec'y of HHS*, Dk. No. 17-12V, 2019 WL 1561519 (Fed. Cl. Spec. Mstr. March 20, 2019 (awarding $185,000 for past pain and suffering, and $1,500 per year for future pain and suffering).

In response, Respondent has proposed an award of $166,500.00 for pain and suffering with no future component. Resp. at 12, 13. Respondent noted that this was a "mild to moderately severe" SIRVA, along with evidence that Petitioner's surgeries provides some relief. *Id.* at 10. Additionally, certain comorbidities unrelated to the vaccine injury, including degenerative changes in Petitioner's cervical spine, may be contributing

to her pain. Respondent also noted that Petitioner had treatment gaps, such as between July 2017 and August 2018. *Id.* at 11, n.5. According to Respondent, this distinguishes Ms. Welch's case from *Hooper* and *Schoonover* because in both those cases petitioners experienced continuous, severe pain.

Pursuant to my oral ruling on March 26, 2021 (which is fully adopted herein), **I find that $210,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**

The cases most analogous to the case at hand, and hence providing good benchmarks for what the award in this case should be,[5] are *Schoonover* and *Lawson*.[6] The petitioner in *Schoonover* reported constant pain both at rest and with activities, rating it at eight out of ten. The pain did not improve following multiple steroid injections, and even after two surgeries the petitioner continued to have pain. *Schoonover*, 2020 WL 5351341, at *4. At the time, *Schoonover* was the only SIRVA case in the Vaccine Program where a petitioner underwent *two* shoulder surgeries on top of multiple steroid injections and numerous physical therapy sessions. *Id*. Due to the unique severity level of the injury, *Schoonover* petitioner was awarded $200,000 in past pain and suffering, and $1,200 per year for her life expectancy, reduced to net present value. *Id*. at *6.

The *Lawson* petitioner, a 35-year-old nurse, also received a fairly high award - $205,000 for actual pain and suffering. *Lawson,* 2021 WL 688560, at *5. There, over just four years, the petitioner underwent three surgeries, seven cortisone injections, four rounds of physical therapy, six MRIs, and continues to suffer pain. *Id.* Her pain, however, was intermittent in character, and she also suffered from some comorbidities that may not have been related to her SIRVA. *Id*. at *6.

Like *Schoonover* and *Lawson*, the severity of Petitioner's injury, plus her overall therapeutic course, including the number of interventions over four years, supports a higher than normal award for pain and suffering. Based on the current records, Petitioner underwent three surgeries, three steroid injections, dozens of physical therapy sessions, and numerous MRIs. There are some periods when Petitioner was not treating, but she persuasively explained in her affidavits why these gaps occurred, and I therefore do not find they suggest a lower severity than alleged. Further, as in *Lawson*, certain

---

[5] I acknowledge that neither *Schoonover* nor *Lawson* is binding on this decision. *Nance v. Sec'y of of Health & Human Servs.*, No. 06–730V, 2010 WL 3291896 at *8 (Fed. Cl. Spec. Mstr. July 30, 2010); *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998) ("[s]pecial masters are neither bound by their own decisions nor by cases from the Court of Federal Claims, except, of course, in the same case on remand.").

[6] *Lawson v. Sec'y of Health & Hum. Servs.*, No. 18-882V, 2021 WL 688560 (Fed. Cl. Jan. 5, 2021).

comorbidities may have played a role and complicated her injury, but not enough to significantly detract from award.

However, I also conclude that an award of future pain and suffering is not appropriate in this case. It does not appear that Petitioner has the level of disability that some petitioners face after a SIRVA injury. Additionally, while Petitioner did face unfair actions by her employer in seeking treatment for her SIRVA, ultimately, her ability to work and earn income has been unaffected. The ongoing nature of her injury therefore is not of the heightened degree that would make a future component appropriate.

Overall, I conclude that an award, consistent with *Schoonover* and *Lawson*, of $210,000, is an appropriate award for Petitioner's actual pain and suffering.

## I.     Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $210,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[7] **I also find that Petitioner is entitled to $11,234.94 in actual unreimbursable expenses and $1,609.13 in past lost wages.**

Accordingly, **I award Petitioner a lump sum payment of $222,844.07 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under § 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[8]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u><br>
Brian H. Corcoran<br>
Chief Special Master

---

[7] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.